**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JEREMY I. KOSMAC,                                         Civil Action No. __2:22-CV-1480__

        Plaintiff,

        v.

THE NATIONAL RAILROAD
PASSENGER CORPORATION
d/b/a AMTRAK,

        Defendant.                                         JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Jeremy I. Kosmac, by undersigned counsel, files this Complaint, and in support thereof, avers as follows:

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§12101, *et seq*. as amended; and 28 U.S.C. §§ 1331 and 1343(a)(4).

### II. Administrative Exhaustion

2. Plaintiff has satisfied all procedural and administrative requirements set forth in 42 U.S.C. §12102, *et seq*. in that:

    a. On or about March 31, 2022, Plaintiff filed a timely charge alleging disability discrimination with the Equal Employment Opportunity Commission (EEOC), which was cross-filed as a complaint with the Pennsylvania Human Relations Commission (PHRC).

    b. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated September 27, 2022.

    c. This case was filed within 90 days of receipt of the EEOC Dismissal and Notice of Rights.

### III. The Parties

3.      Plaintiff, Jeremy I. Kosmac, is an adult individual residing in Allegheny County, Pennsylvania.

4.      Defendant, The National Railroad Passenger Corporation d/b/a Amtrak is incorporated under the laws of the District of Columbia and has a registered business office at 1 Massachusetts Avenue NW, Washington, DC 20001.

5.      At all times relevant hereto, Defendant is and was an employer within the meaning of the ADA, 42 U.S.C. §§ 12111(2) and (5)(A), as amended, in that it is an employer engaged in an industry affecting interstate commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current and/or preceding year.

6.      At all times relevant hereto, Defendant acted or failed to act by and through its duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

### IV. Factual Background

7.      Defendant hired Kosmac on September 4, 2008 as a Police Officer.

8.      On October 1, 2012, Defendant promoted Kosmac to Detective, which was a daylight position.

9.      The promotion was a plain clothes position that focused on investigations, acting as a liaison between Defendant and other law enforcement agencies.

10.     Around May 2019, Kosmac was called into a meeting in Wilmington, Delaware to discuss the conclusion of an investigation regarding three anonymous complaints which had been filed against him by an employee at the Pittsburgh Amtrak

station.

11.    Kosmac, Deputy Chief of Police Maureen Powers, Sergeant Joseph Harper and Sergeant Charles Stefanowicz attended the meeting.

12.    During the meeting, Defendant told Kosmac that none of the allegations of misconduct could be proven, therefore, no discipline would be issued.

13.    During the May 2019 meeting, Defendant also told Kosmac that, in light of the allegations, the department wanted to appear more transparent and accountable and that departmental needs required a redeployment of resources.

14.    Defendant claimed that in order to do so, it would require Kosmac to work a new schedule of working an overnight shift, Monday through Friday.

15.    Defendant also told Kosmac that, moving forward, he was to work in a visible patrol capacity and in uniform.

16.    Kosmac was the first and only Detective to be scheduled to work any hours other than daylight.

17.    Kosmac suffers from insomnia and anxiety and working the overnight shift caused his health conditions to worsen.

18.    Throughout the time Kosmac was forced to work the overnight shift, he expressed concerns he had with his physical and emotional health issues to his supervisors.

19.    Kosmac's chain of command included Sgt. Stefanowicz, Sgt. Harper, Captain Kevin O'Connell and Deputy Chief Powers.

20.    Of those individuals, Sgt. Stefanowicz was the only one who was willing to communicate with Kosmac.

3

21.    The others ignored Kosmac's attempted communications and continually refused his request for a reasonable accommodation of being scheduled to work daylight shifts.

22.    Kosmac made Sgt. Stefanowicz aware that the overnight shift was affecting his health as his inability to sleep was impacting both his mental health issues (anxiety and stress) and his physical health (irritable bowel syndrome).

23.    On at least one occasion, Kosmac expressed suicidal ideations to Sgt. Stefanowicz, referring to his desire to jump in front of a train, when discussing how the overnight shift was affecting his health.

24.    Sgt. Stefanowicz was empathetic and was able to allow Kosmac to work increasingly more daylight hours.

25.    Around February 2021, Kosmac participated in a conference call with his then-Union President, William Gonzalez, and Deputy Chief Powers.

26.    During this call, Deputy Chief Powers acted as if she had no knowledge of Kosmac's medical issues even though Kosmac had taken his previous requests for accommodations through the chain of command.

27.    At that time, Deputy Chief Powers agreed to allow Kosmac to work two weeks of daylight shift per month.

28.    As a result of the above meeting, Sgt. Stefanowicz became more flexible with scheduling Kosmac so that he was predominantly working daylight shifts and was only scheduled to work overnights when there was no other activity.

29.    Defendant provided this reasonable accommodation for about six months.

30.    In August 2021, however, Sgt. Harper notified Kosmac via email that

effective immediately Kosmac's schedule would go back to midnight shifts with no exceptions.

31.    Kosmac attempted to contact Sgt. Harper to discuss his ongoing requests for reasonable accommodations, but Sgt. Harper refused to take Kosmac's phone call.

32.    Kosmac also attempted to contact Deputy Chief Powers and Inspector Glen Cosner to discuss his request that Defendant continue to reasonably accommodate his disability, but they also refused to answer Kosmac's calls.

33.    Kosmac called off sick the night that he received Sgt. Harper's email.

34.    In response to Kosmac's call-off, then-Acting Captain Michael Smith emailed Kosmac and requested that he provide medical documentation for the call-off, implying that discipline would result if Kosma did not comply.

35.    The request was unusual given Defendant's sick time policy allows for 2 consecutive days, 3 times per quarter, prior to any request for medical documentation.

36.    The following week, after an appointment with his PCP, Kosmac provided a doctor's note to address his call-off.

37.    Kosmac attempted to work several overnight shifts but called off again due to lack of sleep from his insomnia.

38.    Kosmac saw his PCP again because it became apparent that he was going to continually need medical documentation for any day that he called off.

39.    Kosmac's PCP formally diagnosed him with sleep-shift disorder, adult anxiety disorder, and depression and prescribed him with medication.

40.    At that time, Kosmac continued to call-off from work due to his medical conditions and Defendant's refusal to provide him with a reasonable accommodation of

scheduling him to work primarily daylight shifts.

41.     Kosmac also initiated paperwork to take a medical leave because Defendant continued to refuse to discuss the possibility of working any shift other than midnight shifts.

42.     On November 12, 2021, Kosmac exhausted all of his accrued sick and vacation time.

43.     That same day, Kosmac was forced to resign from his employment because Defendant, without explanation, refused to discuss any reasonable accommodations with him after August 2021, even after Defendant received medical documentation regarding Kosmac's requested reasonable accommodation.

44.     During his medical leave, Kosmac was in contact with Sgt. Stefanowicz, who gave no indication that Defendant was willing to engage in any discussion regarding Kosmac's requested accommodation.

45.     Detective David Fitch, who replaced Kosmac in Pittsburgh, works regular daylight hours despite Defendant's assertion that "department needs" required Kosmac to work overnight shifts.

46.     At all relevant times, Kosmac was disabled within the meaning of the ADA because, due to his insomnia, anxiety, depression, sleep shift disorder and irritable bowel syndrome (IBS), Kosmac had mental impairments that substantially limited one or more major life activities, has a history of such impairment and/or is regarded as having such an impairment.

6

## COUNT I
## ADA – Failure to Accommodate

47.    Kosmac incorporates by reference the allegations of paragraphs 1 through 46 as if fully restated herein.

48.    Defendant denied Kosmac's requests for a reasonable accommodation of a daylight schedule and denied employment opportunities to Kosmac because of the need to make reasonable accommodations to Kosmac's known disability in violation of Section 102(b) of the ADA, 42 U.S.C. § 12112(b)(5)(A), and 12112(b)(5)(B).

49.    Defendant's actions of denying Kosmac's request for a reasonable accommodation and constructively discharging Kosmac because of the need to make reasonable accommodations to Kosmac's known disability were undertaken with reckless indifference to Kosmac's federally protected right to be employed without regard for his disability.

50.    As a direct result of Defendant's discriminatory actions in violation of the ADA, Kosmac has lost wages and other economic benefits of employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Kosmac requests the following:

    a.    That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the ADA;

    b.    That Defendant be ordered to reinstate Kosmac into the position he occupied prior to November 12, 2021, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

    c.    That Defendant be required to compensate Kosmac for the full value of wages he would have received had it

not been for Defendant's illegal treatment of Kosmac, with interest from November 12, 2021, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d.   That Defendant be required to provide Kosmac with front pay if the Court determines reinstatement is not feasible;

e.   That Defendant be required to compensate Kosmac for lost benefits, including profit sharing and/or pension benefits until Kosmac's normal retirement date;

f.   That Kosmac be awarded compensatory damages in an amount to be determined at trial;

g.   That Defendant be ordered to pay Kosmac punitive damages;

h.   That Defendant be enjoined from discriminating or retaliating against Kosmac in any manner prohibited by the ADA;

i.   That Kosmac be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

j.   That Kosmac be granted such further legal and equitable relief as the Court may deem just and proper.

## COUNT II
## ADA – Discrimination

51.   Kosmac incorporates by reference the allegations of paragraphs 1 through 50 as if fully restated herein.

52.   Kosmac is a qualified individual with a disability within the meaning of the ADA.

53.   Defendant constructively terminated Kosmac because of his disability, record of disability and/or perceived disability in violation of Section 102(a) of the ADA,

42 U.S.C. §12112(a).

54.     Defendant's actions of constructively terminating Kosmac because of his disability, record of disability and/or perceived disability were undertaken with reckless indifference to Kosmac's federally protected right to be employed without regard for his disability.

55.     As a direct result of Defendant's discriminatory actions in violation of the ADA, Kosmac has lost wages and other economic benefits of his employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Kosmac requests the following:

a.     That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the ADA;

b.     That Defendant be ordered to reinstate Kosmac into the position he occupied prior to November 12, 2021, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

c.     That Defendant be required to compensate Kosmac for the full value of wages he would have received had it not been for Defendant's illegal treatment of Kosmac, with interest from November 12, 2021, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d.     That Defendant be required to provide Kosmac with front pay if the Court determines reinstatement is not feasible;

e.     That Defendant be required to compensate Kosmac for lost benefits, including profit sharing and/or pension benefits until Kosmac's normal retirement date;

f.     That Kosmac be awarded compensatory damages in an amount to be determined at trial;

g.   That Defendant be ordered to pay Kosmac punitive damages;

h.   That Defendant be enjoined from discriminating or retaliating against Kosmac in any manner prohibited by the ADA;

i.   That Kosmac be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

j.   That Kosmac be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted:

**RAMAGE LYKOS, LLC**

*/s/ Nikki Velisaris Lykos*
Nikki Velisaris Lykos
PA I.D. No. 204813

Colleen E. Ramage
PA I.D. No. 64413

525 William Penn Place
28th Floor
Pittsburgh, PA  15219
(412) 325-7700 (phone)
(412) 325-7755 (fax)
nlykos@ramagelykos.law
cramage@ramagelykos.law

Attorneys for Plaintiff